*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 16**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LAURA NYCOLE HOOKER,
*Petitioner,*

*v.*

UTAH LABOR COMMISSION and THE KROGER COMPANY,
*Respondents.*

No. 20240556
Heard September 8, 2025
Filed July 16, 2026[*]

On Certification from the Court of Appeals

Utah Labor Commission
No. 21-0455

Attorneys:

Michael Gary Belnap, Ogden, Virginius Dabney, St. George,
Stony V. Olsen, Moroni, for petitioner

Christopher Hill, Salt Lake City, for respondent
Utah Labor Commission

Mark R. Sumsion, Salt Lake City, for respondent Kroger Company

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which JUSTICE PETERSEN, ASSOCIATE CHIEF JUSTICE POHLMAN,
JUSTICE NIELSEN, and JUDGE MABEY joined.

Due to his retirement, JUSTICE PEARCE did not participate herein;
DISTRICT COURT JUDGE JENNIFER A. MABEY sat.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven justices." Utah Code § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

JUSTICE HAGEN stepped down from the court before this case was decided. JUSTICE NIELSEN, having reviewed the briefs and listened to a recording of the oral argument, substituted for JUSTICE HAGEN and participated fully in this decision.

JUSTICE JORGENSEN and JUSTICE DENT became members of the Court after oral argument in this matter and did not participate.

———————

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    Laura Hooker challenges the Labor Commission Appeals Board's (Board) order dismissing her workers' compensation claim and imposing monetary sanctions.

¶2    Under Utah Code section 34A-2-602(1), an employee seeking workers' compensation may be ordered to attend an independent medical exam (IME) conducted by a physician chosen by her employer. If the employee obstructs that process, her workers' compensation claim will be suspended during the period of obstruction.[1]

¶3    An administrative law judge (ALJ) ordered Hooker to attend IMEs with three different doctors. Each IME failed. After the first IME failed, the ALJ issued an order instructing Hooker to cooperate with the IME process. Then, after IMEs with two more physicians went sideways, the ALJ suspended Hooker's claim. The ALJ did so on the ground that she had obstructed her employer Kroger's statutory right to obtain an IME. On appeal, the Board modified this order and escalated sanctions to dismissal under rule 37 of the Utah Rules of Civil Procedure.

¶4    We have not yet defined what it means to obstruct under section 34A-2-602(2). But because we conclude that dismissal is an unavailable sanction, we do not need to reach the question of whether Hooker was obstructive. Instead, we set aside the Board's order on the ground that it erred in dismissing Hooker's claim. So Hooker's claim is once again suspended, and the Board should proceed consistent with this opinion.

———————

[1] UTAH CODE § 34A-2-602(2).

## BACKGROUND

¶5    In 2015, Hooker alleged that she suffered from injuries to her left thumb and elbow while working for her employer, Kroger. These injuries led to a diagnosis of complex regional pain syndrome (CRPS). CRPS is a neurological pain condition characterized by severe, persistent pain that is often disproportionate to the inciting injury.[2] It can be accompanied by sensory and motor abnormalities.[3] Pain can be caused by "light touch or even a breeze."[4] "Experts believe that in CRPS, the body's pain system becomes overly sensitive and gets stuck in a cycle of pain."[5]

¶6    Hooker filed a claim with the Labor Commission seeking workers' compensation for her injuries in 2021. During discovery, the ALJ ordered Hooker to attend an IME with Dr. Mattingly in accordance with Utah Code section 34A-2-602(1), which permits requiring an employee to submit to a medical exam. Dr. Mattingly required Hooker to fill out some paperwork prior to the appointment. When Hooker arrived for the IME, she took issue with certain provisions in the paperwork and refused to sign it. The IME did not proceed.

¶7    Kroger then filed a motion to compel Hooker to attend and cooperate with another IME. The ALJ denied the motion. Instead, the ALJ explained the challenged provisions of Dr. Mattingly's paperwork to Hooker and then gave Hooker "one more opportunity to attend and cooperate" with Dr. Mattingly.

¶8    When Hooker questioned portions of the paperwork again during communications with Dr. Mattingly, Kroger filed a motion to compel, which the ALJ granted this time. The order stated that

---

[2] *See Complex Regional Pain Syndrome*, NIH: Nat'l Inst. of Neurological Disorders & Strokes, https://www.ninds.nih.gov/health-information/disorders/complex-regional-pain-syndrome (last visited July 1, 2026).

[3] *See id.*

[4] *Understanding Complex Regional Pain Syndrome (CRPS) & How to Manage It*, Stanford Med.: Div. of Pain Med., https://med.stanford.edu/pain/about/chronic-pain/crps.html (last visited July 1, 2026).

[5] *Id.*

Hooker had no reason not to complete the forms and compelled Hooker to attend and cooperate with a rescheduled IME, including by completing Dr. Mattingly's forms.

¶9    After that order, Hooker attended that IME and fully completed the forms. At the IME, she attempted to record the exam. But Dr. Mattingly refused to complete the exam, alleging that Hooker was "very confrontational and very hostile when she was told the exam could not be recorded." Hooker disputed that version of events, stating she had been neither hostile nor insistent on recording the exam.

¶10   Because the second IME with Dr. Mattingly was cancelled, Kroger filed a motion to dismiss and a motion for sanctions, which the ALJ granted, concluding that Hooker "and her attorneys ha[d] repeatedly frustrated and hindered [Kroger]'s right to . . . obtain a medical examination with a physician of its choice." The ALJ found that Hooker's conduct was not substantially justified and ordered dismissal, consistent with rule 37(b) of the Utah Rules of Civil Procedure. The ALJ also ordered Hooker's attorneys to pay the cancellation expenses for the medical examination.

¶11 Hooker appealed to the Board. The Board reversed the ALJ's order dismissing the claim and its order for costs, noting that Utah Code section 34A-2-602(2) designates the remedy for obstructing a medical examination as suspension of the claims "during the period of the refusal or obstruction." But the Board found that Hooker "frustrated the process and obstructed Dr. Mattingly's examination due to her antagonistic and confrontational language," such that it was reasonable for Dr. Mattingly to decline to perform the exam. So the Board suspended Hooker's claim under Utah Code section 34A-2-602(2) "unless and until she is willing to cooperate with an examination by the medical consultant of Kroger's choice."

¶12 Following this order, Hooker again expressed her willingness to be examined by Dr. Mattingly or another doctor chosen by Kroger. Kroger retained a second physician, "as Dr. Mattingly was no longer willing to meet with Ms. Hooker due to her behavior." Before the examination, Hooker "submitted a list of certain demands" for the exam with the new physician, Dr. Jiricko. Dr. Jiricko, before even meeting with Hooker, cancelled the exam because of her alleged reputation "as uncooperative and hostile to Dr. Mattingly." Kroger then scheduled an examination with a third physician, Dr. Theiler.

¶13  In early September 2023, Hooker arrived for her medical examination with Dr. Theiler. As with Dr. Jiricko, Hooker submitted a list of requirements to ensure her condition was not aggravated during the exam, including requesting the room be kept at a temperature above seventy degrees. Dr. Theiler confirmed by email that he kept his office at seventy-two degrees. Hooker also signed a pre-appointment waiver, which included an agreement to tell Dr. Theiler if she experienced any pain during the exam.

¶14  The examination was video recorded and transcribed. At the beginning of the exam, Hooker reminded Dr. Theiler that she needed to stay in a room above seventy degrees to avoid aggravating her CRPS. Hooker also asked if it was possible to move into a room without central air, expressing that she was in pain and could feel the air aggravating her condition. Dr. Theiler offered to have her move to a different part of the room to avoid the air flow and noted that he didn't feel anything.

¶15  Dr. Theiler began the exam by explaining his role as an examiner and said that he would ask standard questions before performing a physical exam. Dr. Theiler also reminded Hooker to notify him if at any point she experienced pain or if the exam worsened her symptoms. Hooker said to Dr. Theiler that Kroger's attorney was supposed to have provided Dr. Theiler with a copy of her deposition testimony, and that her attorney had instructed her to decline to answer questions she had previously answered in that deposition. The "only questions [she was told she was] supposed to be answering [were] the physical exam questions."

¶16 As the questioning proceeded, she answered some questions but declined to answer others, pointing to her deposition as she had been instructed to do. For example, Hooker would not initially answer when Dr. Theiler asked her how she was injured or what treatment she originally received. At one point, Hooker asked to call her attorney to confirm if she could answer a particular question. Dr. Theiler told her that rather than call her attorney, he would note that she was not going to answer questions and he was "just going to do the exam."

¶17  The exam proceeded. When Dr. Theiler was "almost done" with the questions, Hooker asked again if there was any way he could turn down the air conditioning and Dr. Theiler offered to turn up the heat. At one point, Dr. Theiler held up a piece of paper to demonstrate the lack of airflow. Dr. Theiler then asked the videographer if he felt a breeze, and the videographer stated,

"maybe a slight breeze." Dr. Theiler noted that Hooker was still wearing a jacket and glove and explained that she would need to take them off for the physical examination. He asked Hooker if she "want[ed] to stop the evaluation." She said, "No. I've got to proceed," but expressed concern that it would cause more pain and cause her CRPS to spread. She reiterated that she wanted to do the exam but asked if there was anywhere else they could do it, away from the central air. Dr. Theiler said he had turned the air conditioning off in the exam room, but the central air was still running throughout the building. Hooker repeated that she wanted to have the exam completed; and Dr. Theiler stated, "I'm not going to get accused of making your symptoms worse." He explained, "[T]hat's why I'm not going to do the exam because I'm not going to be accused of making you —" Hooker interrupted, insisting the exam continue and removed her arm from behind her jacket.[6]

¶18 Hooker eventually called her attorney and said that the room said it was seventy-four degrees but the central air was blowing. Hooker stated to her attorney, but loud enough that Dr. Theiler could hear, that she would go forward with the exam anyway. Dr. Theiler then cancelled the exam, stating that he could not accommodate the central air restriction, which had not been communicated to him in advance. Specifically, he stated that "[Hooker] doesn't tolerate central air. I'm not going to do this and not going to be accused of causing increased pain. We are finished. We are done." He also noted that he had accommodated her temperature request, but that every room at that location had central air, so there was no way to avoid it.

¶19 Hooker's attorneys tried to reschedule the next day. Kroger filed a motion to dismiss.

*A. Administrative Law Judge Decision*

¶20 Kroger moved to suspend the case and impose sanctions for obstructing the medical examination. The ALJ found that, "from viewing the recordings, the . . . examination room was at an appropriate temperature (above 70 degrees) and there was no air flow near [Hooker] that was bothering her, as shown by Dr. Theiler's act of holding a paper towel sheet near the chair where

---

[6] Hooker wore a jacket but used the bottom edge of her jacket to further block her hand from the air. She removed her hand from behind this bottom edge, but her jacket remained on.

[Hooker] had been sitting in the corner of the room." "The Court also finds that [Hooker's] continued complaints about the air vent current were unfounded and unreasonable because, without discounting [Hooker's] CRPS condition, there was no evidence of any airflow near her." Based on this, and given that it was the third failed IME, the ALJ granted the motion, suspending Hooker's claim and assessing costs against Hooker for the cancellation of the medical examination and related legal fees.

### B. Labor Commission Appeals Board Decision

¶21 Hooker appealed again to the Board. The Board agreed with and expanded upon the ALJ's findings that Hooker obstructed the medical examination, concluding that Hooker demonstrated a "pattern of antagonistic and obstructive behavior" with a classic "three-strike" scenario that should leave her out of options for further redress. The Board based this conclusion on Hooker's appointments with all three doctors, describing her interactions with each and ultimately concluding that despite having "multiple opportunities to submit to an examination by Kroger's medical consultants," she continued to obstruct them even after being ordered to cooperate.

¶22 The Board decided that this pattern of behavior by Hooker and her attorneys warranted a greater sanction than suspension. Changing its mind from its previous order and relying on *Barker v. Labor Commission*,[7] the Board concluded that medical examinations are part of the discovery process such that they are subject to ordinary sanctions under rule 37 of the Utah Rules of Civil Procedure.[8] And the Board found that, because Hooker's obstruction was broader than a simple failure to attend a medical examination, the sanction of suspension prescribed for obstruction under Utah Code section 34A-2-602(2) was insufficient. So the Board modified the ALJ's order and dismissed Hooker's claim with

---

[7] 2023 UT App 31, 528 P.3d 1260. The court of appeals held that employees subject to a medical examination are permitted to record the exam based on rule 35 of the Utah Rules of Civil Procedure. *Id.* ¶ 12. In so holding, the court noted that the Administrative Procedures Act and the Labor Commission's rules incorporate the Utah Rules of Civil Procedure for discovery issues unless a statute or the Labor Commission rules provide otherwise. *Id.* ¶ 7.

[8] (Citing *id.* ¶ 12.)

prejudice. The Board also imposed the monetary sanctions outlined by the ALJ on Hooker's attorneys.

¶23 Hooker sought judicial review and the court of appeals certified the case to this court.

## ISSUES AND STANDARD OF REVIEW

¶24 Hooker raises four issues. First, she argues that the Board misinterpreted Utah Code section 34A-2-602(2) and rule 37 of the Utah Rules of Civil Procedure when it deemed dismissal an appropriate sanction for obstructing an IME. Second, she challenges the Board's conclusion that her conduct amounted to obstruction under Utah Code section 34A-2-602(2). Third, she asserts that the dismissal order violated her rights to due process under the Utah Constitution's article 1, section 7. And finally, Hooker challenges the validity of the monetary sanction the Board imposed on her attorneys. Because the first issue renders the need to address the next two issues moot, we will only address the question of dismissal and monetary sanctions.

¶25 "The standard of review applied to an appeal from an administrative decision depends on the type of agency action alleged to be erroneous and whether that action incorporates a specific standard of review under [the Utah Administrative Procedures Act]" (UAPA).[9] "[W]here there is no explicit delegation of discretion and the issues are questions of . . . statutory construction, we review the agency's decision for correctness."[10]

## ANALYSIS

¶26 We begin by considering the different provisions that empower the Board to impose sanctions on Hooker. We then identify that Utah Code section 34A-2-602(2), which provides the sanction of suspension when an employee obstructs an IME, conflicts with rule 37(b) of the Utah Rules of Civil Procedure, which the Labor Commission has incorporated to allow for more general discovery sanctions—including dismissal. We conclude that where such conflict exists, the specifically prescribed sanction of

---

[9] *See Gamez v. Utah Lab. Comm'n*, 2022 UT 20, ¶ 23, 511 P.3d 1145 (cleaned up).

[10] *Elks Lodges No. 719 (Ogden) & No. 2021 (Moab) v. Dep't of Alcoholic Beverage Control*, 905 P.2d 1189, 1193 (Utah 1995).

suspension prevails. So the Board incorrectly determined it could apply the sanction of dismissal.[11]

¶27 Having resolved the issue of dismissal, we end our analysis by addressing the monetary sanctions that Hooker challenges. We conclude that, given the Board imposed monetary sanctions on Hooker's attorneys and not Hooker herself, Hooker is not the proper party to challenge the monetary sanctions.

I. DISMISSAL IS NOT AN APPROPRIATE SANCTION FOR OBSTRUCTION OF AN IME BECAUSE THE LEGISLATURE SPECIFICALLY PRESCRIBED THE SANCTION OF SUSPENSION

¶28 We begin with the plain language of the statute. We then place the statute alongside rule 37 and the Labor Commission's rules, identify the apparent conflict, and use canons of construction and the hierarchy between statutes and agency rules to decide which sanction governs. This analysis shows that suspension—not dismissal—is the only available sanction here.

¶29 Starting with the plain language, "the primary objective of statutory interpretation is to ascertain the intent of the legislature."[12] "And the best evidence of the legislature's intent is the plain language of the statute itself."[13] We also interpret our rules based on their plain language.[14] The statute states that "[i]f an

_____

[11] Hooker challenges the dismissal of her case and the determination that she obstructed as an alternative ground for relief. We've reversed the Board's sanction of dismissal, which leaves the obstruction determination in place with the presumptive sanction of suspension, which lasts only "during the period of the refusal or obstruction." UTAH CODE § 34A-2-602(2). But even if we were to reverse the obstruction determination, the orders requiring Hooker's attendance at and participation in an IME remain. Because Hooker has not asked this court to excuse her from those orders, and because she has previously stated that she would facilitate the completion of an IME, it is unnecessary in this case to decide the obstruction issue.

[12] *New Star Gen. Contractors, Inc. v. Dumar, LLC*, 2025 UT 14, ¶ 58, 570 P.3d 339 (cleaned up).

[13] *Id.* (cleaned up).

[14] *Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2020 UT 28, ¶ 13, 466 P.3d 171.

employee refuses to submit to an examination . . . or obstructs the examination . . . the employee's right to have the employee's claim for compensation considered . . . *shall* be suspended."[15] Ordinarily, the use of the word "shall" in a statute indicates a mandatory condition that leaves courts without discretion.[16] So the plain language of the statute indicates that suspension is the mandatory sanction and leaves no discretion for the Board to impose another of its own choosing.

¶30 It becomes more evident that suspension, not dismissal, is the appropriate sanction when comparing rule 37(b) discovery sanctions with Utah Code section 34A-2-602. Utah Code section 34A-2-602(1) states that "[t]he [D]ivision [of Adjudication] or an administrative law judge may require an employee claiming the right to receive [workers'] compensation . . . to submit to a medical examination at any time, and from time to time, . . . and as may be provided by the rules of the commission." In cases where "an employee refuses to submit to an examination . . . or obstructs the examination, the employee's right to have the employee's claim for compensation considered, . . . or to receive any payments for compensation theretofore granted by a final order of the commission, shall be suspended during the period of the refusal or obstruction."[17]

¶31 These statutory provisions empower the Labor Commission to adopt rules specific to workers' compensation medical examinations.[18] The Labor Commission has taken that invitation, adopting a rule that "[u]pon reasonable notice, the respondent may require the petitioner to submit to a medical examination by a physician of the respondent's choice."[19] The Labor Commission has formally incorporated rule 37(b) of the Utah Rules of Civil Procedure, stating that "[a]ny party who fails to obey an administrative law judge's discovery order shall be subject to

---

[15] UTAH CODE § 34A-2-602(2) (emphasis added).

[16] *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶¶ 23, 27, 367 P.3d 994 (describing terms such as "'shall', 'must', or 'agree,'" as mandatory terms).

[17] UTAH CODE § 34A-2-602(2).

[18] *See id.* § 34A-2-602(1).

[19] UTAH ADMIN. CODE R602-2-1(F)(3).

the sanctions available under the Utah Rules of Civil Procedure, Rule 37."[20]

¶32 Rule 37(b) authorizes a court to "impose appropriate sanctions for the failure to follow its orders" unless "the failure was substantially justified." Authorized sanctions include:

> (1) deem[ing] the matter or any other designated facts to be established in accordance with the claim or defense of the party obtaining the order;

> (2) prohibit[ing] the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters into evidence;

> (3) stay[ing] further proceedings until the order is obeyed;

> (4) dismiss[ing] all or part of the action, strik[ing] all or part of the pleadings, or render[ing] judgment by default on all or part of the action;

> (5) order[ing] the party or the attorney to pay the reasonable costs, expenses, and attorney fees, caused by the failure; and

> (6) instruct[ing] the jury regarding an adverse inference.[21]

---

[20] *Id.* R602-2-1(F)(9). The Utah Rules of Civil Procedure are also incorporated into workers' compensation proceedings under the Administrative Procedures Act, which provides that "[i]n formal adjudicative proceedings, the agency may, by rule, prescribe means of discovery adequate to permit the parties to obtain all relevant information necessary to support their claims or defenses." UTAH CODE § 63G-4-205(1). "If the agency does not enact rules . . . , the parties may conduct discovery according to the Utah Rules of Civil Procedure." *Id.* The Labor Commission rules provide that "the Division shall generally follow the Utah Rules of Civil Procedure regarding discovery . . . , except as the Utah Rules of Civil Procedure are modified by" express statutory provisions or the agency's own rules. UTAH ADMIN. CODE R602-2-1(P).

[21] UTAH R. CIV. P. 37(b). We cite to the current version of this rule. "When the differences between the version in effect at the time

(continued . . .)

¶33 Rule 37(b) and Utah Code section 34A-2-602 conflict to the extent an ALJ has entered an order requiring an employee to submit to an IME or be subject to discovery sanctions. Utah Code section 34A-2-602(2) provides for an express sanction of suspension for obstruction of an IME. And using the *expressio unius* canon of statutory construction, by providing for one specific sanction, we discern that the legislature indicated its intent to exclude other sanctions here.[22] In contrast, rule 37(b) provides for a variety of sanctions for the failure to comply with a discovery order—which seems to encompass the discovery order here compelling Hooker to attend and cooperate. To the extent there is a conflict, it is clear who wins: "an agency rule"—even one incorporating our court rules—"cannot trump a statutory provision."[23] It follows that the only sanction available for obstruction of a medical examination is suspension of the employee's claims during the period of refusal or obstruction.

¶34 The Board originally agreed with this conclusion. Following the failed examination with Dr. Mattingly, the Board ruled that the only sanction available for obstruction of a medical examination was suspension and reversed the ALJ's order dismissing Hooker's claim.

¶35 But following the failed examination with Dr. Theiler, the Board changed its course. The Board noted its past precedent limiting the sanctions available for obstruction of a medical examination to suspension. That precedent distinguished "between disobeying a discovery order"—which could be sanctioned under rule 37(b)—"and failing to attend the medical examination"—punishable only by suspension. The Board reasoned that such a distinction "became outmoded by the Utah

---

of the events and the current version of the statutes are inconsequential to the case, we cite to the current version." *GeoMetWatch Corp. v. Utah State Univ. Rsch. Found.*, 2018 UT 50, ¶ 12 n.2, 428 P.3d 1064 (cleaned up).

[22] *McKitrick v. Gibson*, 2021 UT 48, ¶ 38, 496 P.3d 147 (noting that the canon of construction "*expressio unius est exclusio alterius . . .* holds that to express or include one thing implies the exclusion of the other, or of the alternative" (cleaned up)).

[23] *Crossroads Plaza Ass'n v. Pratt*, 912 P.2d 961, 966 (Utah 1996) (cleaned up).

Court of Appeals formally characterizing medical examinations . . . as part of the discovery process."

¶36 The Board pointed to *Barker v. Labor Commission*, in which the court of appeals held that employees subject to a medical examination are permitted to record the exam based on rule 35 of the Utah Rules of Civil Procedure.[24] In so holding, the court noted that the Administrative Procedures Act and the Labor Commission's rules incorporate the Utah Rules of Civil Procedure for purposes of discovery unless a statute or the Labor Commission's rules provide otherwise.[25] While some details of the medical examination process are outlined by statute and rule, where the rules were silent about recording, the court of appeals concluded that rule 35 stepped in to fill the gap.[26]

¶37 The Board misinterpreted *Barker*, stretching its conclusion that medical examinations are part of the discovery process to mean that a complainant who obstructs an IME is subject to the full panoply of discovery sanctions in rule 37. On judicial review, Kroger also reasons that if rule 35 applies to medical examinations of this sort, rule 35's incorporation of rule 37(b) sanctions must also apply.[27]

¶38 But those arguments ignore the broader principle recognized in *Barker*—that under the Labor Commission's own governing statutes and rules, the Utah Rules of Civil Procedure apply to the extent they do not conflict with specific statutory or rule provisions.[28] So while the medical examination may be part of discovery, and the Rules of Civil Procedure may fill in gaps not provided for by statute or the Labor Commission's own rules, where Utah Code section 34A-2-602 provides for a specific sanction for obstruction of an IME, that must override the more general list of sanctions listed in rule 37(b) for related discovery violations.

¶39 We also find the "specific-general" canon to be instructive here. Under this canon, specific provisions ordinarily apply over

---

[24] 2023 UT App 31, ¶ 12, 528 P.3d 1260.

[25] *Id.* ¶ 7.

[26] *Id.* ¶¶ 8–12.

[27] *See* UTAH R. CIV. P. 35(c).

[28] *See Barker*, 2023 UT App 31, ¶¶ 8–12.

general ones.[29] This canon reasons that it would be odd for the legislature to take the effort to prescribe a specific sanction but intend the more general one to take effect.[30] This logic is apt here given the legislature provided a specific sanction to be applied when an employee obstructs an IME.

¶40 Based on the plain language of the statute, the canons of statutory interpretation we have identified, and the rules governing the application of the Utah Rules of Civil Procedure, we conclude that suspension is the only available sanction here.

¶41 Even though we reach this conclusion, we do acknowledge that the Board found dismissal to be appropriate because Hooker demonstrated a "pattern of obstructive and uncooperative behavior" such that suspension would not be effective in resolving the discovery challenges. While we recognize the meaningful difference between a one-time failure to appear for an examination and repeated obstruction, that distinction is not recognized in the statute, which provides for a single sanction—suspension—when an employee obstructs a medical examination. It may be frustrating or seem inconsistent that dismissal and other sanctions may be available for other discovery violations, yet not for the repeated obstruction of a medical examination. But we cannot conclude that the legislature's choice of sanction here is absurd,[31] nor use our own preferred policy to overrule the choices of the legislature.[32]

---

[29] *See Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 300–01 (2d Cir. 2002).

[30] *Id.*

[31] *See Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 46, 357 P.3d 992 (Durrant, C.J., concurring in part on behalf of the majority) (noting that courts apply the absurdity doctrine "to reform unambiguous statutory language where applying the plain language leads to results so overwhelmingly absurd no rational legislator could have intended them").

[32] *See Schroeder Invs., L.C. v. Edwards*, 2013 UT 25, ¶ 25, 301 P.3d 994 ("Public policy concerns, however grave, do not deputize this court to ignore the terms of a statute and act legislatively. We are bound by the policy judgments of the legislature—even if we fundamentally disagree with them.").

¶42 We also note that while it may seem illogical to leave claims in limbo following obstruction of a medical examination, we see no incentive for employees to obstruct medical examinations simply because their claims cannot be dismissed in response. Under the suspension sanction, employees cannot receive benefits or move forward with their claims, which is a sufficient sanction to incentivize employees to move forward in good faith with the examination processes.

¶43 In sum, because Utah Code section 34A-2-602(2) provides that suspension is the only sanction for obstructing a medical examination, we set aside the order of the Board imposing the dismissal.

## II. HOOKER IS THE IMPROPER PARTY TO CHALLENGE THE MONETARY SANCTIONS

¶44 We next address Hooker's challenge to the monetary sanctions imposed against her attorneys.

¶45 "Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties."[33] The traditional standing test requires plaintiffs to allege that they have suffered or will "suffer some distinct and palpable injury that gives them a personal stake in the outcome of the legal dispute."[34] This is a three-step inquiry: (1) "the party must assert that it has been or will be adversely affected by the challenged actions"; (2) "the party must allege a causal relationship between the injury to the party, the challenged actions and the relief requested"; and (3) "the relief requested must be substantially likely to redress the injury claimed."[35]

---

[33] *S. Utah Wilderness All. v. Kane Cnty. Comm'n*, 2021 UT 7, ¶ 16, 484 P.3d 1146 (cleaned up).

[34] *Id.* (cleaned up). There is an exception to the general rule known as third-party standing, but this usually requires meeting "the traditional standing requirements and separately meet[ing] the requirements for third-party standing." *Planned Parenthood Ass'n of Utah v. State*, 2024 UT 28, ¶ 48, 554 P.3d 998. We do not see the makings of traditional standing here, so we do not consider the question of possible third party standing.

[35] *Planned Parenthood Ass'n of Utah*, 2024 UT 28, ¶ 49 (cleaned up).

¶46 Hooker does not have a redressable injury on this claim. The injury alleged is impermissible monetary sanctions against her attorneys. If we were to grant the relief sought and hold that the monetary sanctions were unlawfully imposed, it is Hooker's attorneys who would be relieved of the obligation to pay. There is no suggestion in the record that Hooker is obligated to pay, so such relief would not change Hooker's position. Such a personal stake in the claim is foundational to standing. And without such standing, we cannot address the claim.[36] So we hold that Hooker is the improper party to challenge the monetary sanctions.

## CONCLUSION

¶47 We hold that the Board incorrectly concluded that dismissal is an available sanction for an employee under Utah Code section 34A-2-602(2). Instead, we conclude that the only available sanction is suspension. As to the monetary sanctions, we do not address that issue here because Hooker is an improper party to bring such a claim. Accordingly, we reverse the Board's order to the extent it dismisses Hooker's claim, and we leave the monetary sanctions to be challenged through the proper route.

---

[36] "Standing is an issue that a court can raise sua sponte at any time." *See Gregory v. Shurtleff*, 2013 UT 18, ¶ 11, 299 P.3d 1098 (cleaned up).